WESTON RHODES AND EDWARD O'HARE, PLAINTIFFS AND RESPONDENTS, v. SAMUEL WEIGAND, DEFENDANT AND APPELLANT.

No. 10808.
Submitted February 10, 1965. Decided June 7, 1965.
402 P.2d 588.

Peter L. Rapkoch, Lewistown, Leonard H. McKinney (argued), Lewistown, Larry Persson (argued), Hamilton, for appellant.

Smith, Boone & Karlberg, Missoula, Robert B. Brown, Stevensville, Russell E. Smith (argued), Missoula, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This litigation was commenced in the district court of Ravalli County, on September 21, 1962, by the plaintiffs, hereinafter designated respondents, obtaining a temporary restraining order and order to show cause against the defendant, hereinafter designated appellant. It was claimed that appellant was obstructing the waters of Birch Creek Drain Ditch and that the impounded waters were backing up on respondents' land precluding the respondents from working their crops.

The record discloses that respondent Rhodes was purchasing the 180 acres from respondent O'Hare under a contract for deed.

It was further alleged and agreed that the appellant was the owner in fee of approximately 88 acres lying west of respondents' realty and the two properties were divided by the

tracks of the Northern Pacific Railway and the Montana East Side Highway No. 269.

Both tracts of land were highly developed agricultural farms, growing sugar beets, grain and alfalfa.

. It further appears that the respondents' property slopes toward the west, east and north and that the lands of the appellant are from one to two feet higher than that of the respondents.

In the year 1945, a ditch was constructed known as Birch Creek Drain Ditch to the south of respondents' land to carry away the surplus water on the lands owned by the ditch constructors. The ditch runs in a generally south to north direction along the west side of respondents' property.

The appellant installed a water check in the Birch Creek Drain Ditch on the southeast corner of his land, which when closed obstructs the flow of the water and caused the water to back up and flood the respondents' land for approximately one-half mile, by raising the water level from two to three feet; that the waters of this drain ditch when so obstructed would seep into the respondents' fields raising the water level on this land which precluded respondents from harvesting growing crops and operating their farm machinery.

Prior to the year 1962, respondents would notify appellant of the flooding situation and appellant would open the gate on the water check and stop the seepage and flooding of the respondents' lands.

The record discloses that on September 19, 1962, respondent O'Hare notified the appellant that he was again being flooded and requested appellant to open the check gate which appellant refused to do. It would seem pertinent to observe the testimony of the appellant on this date, as he stated: "He and Mr. O'Hare broke diplomatic relations."

Notwithstanding the apparent animosity between the parties litigant, their respective counsel entered into a written stipulation on May 1, 1963, at the beginning of the 1963 growing

season, which provided that the appellant could obstruct the waters of Birch Creek Drain Ditch for a seventy-two hour period and then remove the obstruction for the ensuing 72 hours.

Appellant filed his answer containing general denials and further pleaded the separate defense of laches, the statutes of limitation, under sections 93-2605, 93-2607 and 93-2613, R.C.M. 1947, and alleged title by prescriptive right under section 67-1203, R.C.M.1947.

The cause was tried before the Honorable George J. Allen as presiding judge on August 8, 1963, at Hamilton, Montana.

After the taking of testimony and admission of exhibits, the trial court on September 23, 1963, found all of the issues for the respondents, but did provide for the appellant to take such water as he was entitled to from the Birch Creek Drain Ditch for irrigation, but to refrain from interference with the free flow of water which would damage the lands of the respondents.

It is from this judgment that appellant appeals and cites six specifications of error.

The first specification of error concerns the testimony of witness Homer Benson, a registered civil engineer and for twenty years county surveyor of Ravalli County.

Mr. Benson prepared a scale map of all of the lands and ditches in the controversy which was admitted into evidence by stipulation. Mr. Benson then testified as to four test holes dug on respondents' land, lined with a six inch pipe to prevent cave-in. The witness then took an assumed elevation or bench mark figure of 100 at the top of the dam at the check gate and using this figure gave figures using this point as reference for relative elevation. Test hole No. 1 was 95.05 feet with reference to the assumed bench mark and was approximately 1,100 feet due east of appellant's check gate contrasted to the 97.19 elevation at the check dam. The witness then testified as to

the other three test holes and their elevations, all of which were lower than the check gate from one to three feet.

Respondents then offered in evidence an engineering log-sheet which gave the readings of water levels from May 16, 1963, to August 7, 1963, of all the test holes and other pertinent locations. The appellant objected to this datum sheet exhibit prepared by the witness, on the ground that it had no bearing on any of the issues.

This testimony was in fact the foundation of the litigation.

As a general proposition, any fact which makes probable the existence of another fact in controversy is relevant to prove the disputed fact, which is the situation here.

The discretion of the trial court as to the admissibility of collateral testimony is entitled to much consideration. In the limited sphere above-recited, the testimony was admissible to assist in a determination founded on truth.

In Brion v. Brown, 135 Mont. 356, 363, 340 P.2d 539, 543, this court stated:

" 'The rules of logic are called into operation to determine the question of relevancy; and it may be said, generally, that whatever naturally and logically tends to establish a *fact in issue* is relevant * * *.' 1 Jones on Evidence, 5th ed., § 151, p. 270."

In Richardson v. Farmers Union Oil Co., 131 Mont. 535, 312 P.2d 134, cited by appellant, this court said:

"* * * it appears to us that where the inference is permitted to show a previous condition the foundation must show that the substances was in the same state or condition at a time not too remote, and that the nature of the substance is constant."

In the Richardson case, supra, the substance was an easily ignited petroleum product in contradistinction to the substance of earth and water. Porosity of land will not change in a year, neither will land elevation such as presented here. It is axiomatic that water will always seek its own level.

In Newman v. Bitter Root Irrigation Dist., 95 Mont. 521, 530,

28 P.2d 195, 197, in a somewhat similar situation this court said:

"Defendant contends that, since plaintiffs' evidence shows that the seepage causing the slides prior to May 13 was 50 feet or more from the west bank of its canal and not from the banks or bottom thereof, it does not show that the seepage came from its canal. As above noted, it was shown that the seepage appeared only when there was water in defendant's canal. There was none before defendant's canal was constructed and none until water was turned into it. These circumstances were sufficient to go to the jury on the question as to where the seepage came from. Defendant alleges in its answer that it came from the irrigated lands to the east. If it can produce evidence to that effect, the question becomes one of fact for the jury. Plaintiffs produced sufficient circumstantial evidence to show that it came from defendant's canal to make of it a jury question."

Bolstering the testimony of Mr. Benson there was further proof as to the excess water on respondents' property.

Bisecting the respondents' north 180 acres running south and north is a drainage ditch built by respondent in 1936 and named O'Hare Drain Ditch. This ditch is utilized to drain surplus water from the property.

Appellant testified that the O'Hare ditch was weed-choked and fouled to such a degree as to negate the ditch draining waste water, this raised a conflict in the testimony.

Mr. N. W. Blindauer, a registered civil engineer who for four years was county surveyor of Ravalli County and for five years was manager and engineer for the Bitterroot Irrigation District testifying for respondents, stated that in the year 1942 he made a complete study of the irrigation problem on respondents' property and looked at the property frequently. He further testified that he was employed by the Montana Water Conservation Board examining irrigation projects, making detailed studies, feasibility and cost analysis of the projects, and

corroborated the testimony of Engineer Benson regarding the test holes and stated that the elevations were correct. He further stated that there was very little water in the O'Hare Drain Ditch and that if the Birch Creek Drain was blocked for extended periods of time it would affect the water table and the drainage of the respondents' property.

■ The witness was adamant on the question of irrigation by use of a sprinkler system. He stated that properly controlled no surface water would remain on the land east of the O'Hare drainage ditch. In this Court it was held that where there is conflict in the testimony, the trial court will resolve the question. Lacey v. Harmon, 137 Mont. 489, 492, 353 P.2d 96; Sands v. Superior Bldgs. Co., 136 Mont. 531, 349 P.2d 314; Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91, all holding that where there is conflict in the testimony, the trial judge will resolve them. Here the trial judge inspected the lands in question.

The above citations answer appellant's first and second specifications of error that the trial court erred in failing to dismiss respondents' complaint on the motion of appellant, and in permitting the engineer witness, Homer Benson, to testify as an expert.

Appellant urges as error the refusal to grant his motion for dismissal of the action at the end of respondents' case in chief. He contends that the motion should have been sustained, in that the respondents failed to establish a prima facie case for permanent injunction. Appellant cites Fleming v. Lockwood, 36 Mont. 384, 385, 92 P. 962, 964, 14 L.R.A.,N.S., 628, wherein it is stated:

"An action of trespass presumes the active agency on the part of the wrongdoer in causing the injury, or, what is the same thing, the doing of the act wantonly or in total disregard of the other's right; while the action on the case assumes that the injury is consequential, or the direct injury is the result of negligence or nonfeasance. In other words, trespass implies

wantonness, malice, or willfulness, while trespass on the case implies only negligence."

He bases this contention on the common law theory that this cause was an action in trespass. Further that the respondents failed to plead or prove either trespass or trespass on the case.

Appellant's attention is directed to section 12-202, R.C.M. 1947, which reads:

"*Codes, how construed.* The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the codes or other statutes of the state of Montana. The codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice."

Appellant cites Fleming v. Lockwood, 36 Mont. 384, 385, 391, 92 P. 962, 964, in support of his position. This court stated the prevailing rule in 1907 in this case and it still remains the rule. "If in fact the seepage occurred as plaintiff contends, it must have been the result of negligence on Lockwood's part, either in constructing or operating the ditch, since it is not contended that it was the result of inevitable accident or was caused by an act of God; and therefore the plaintiff had the burden of proof, in the first instance, *to show negligence* on the part of the defendant."

The record in this cause discloses with clarity that appellant in the year 1947, again in 1961 and again, after complaint had been made to him of the flooding in the year 1962, persisted in his negligent and deliberate acts. To the same effect is Calvert v. Anderson, 73 Mont. 551, 236 P. 847; Newton v. Weiler, 87 Mont. 164, 179, 286 P. 133, O'Hare v. Johnson, 116 Mont. 410, 153 P.2d 888. The specification of error is without merit.

Appellant also advances as error the claim of a prescriptive right under sections 93-2508, which makes mandatory five years as the period for establishing adverse possession, to-

gether with section 67-1203, which defines prescription. The provisions of section 93-2513 are:

"*Occupancy and payment of taxes necessary to prove adverse possession.* In no case shall adverse possession be considered established under the provisions of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of five (5) years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land." The record defeats any such claim on the part of the appellant. The use of the drain was interrupted by appellant in 1947 and again in 1961 and again at the time of commencement of this action. These are the only three trespasses on respondents' land.

Further error is claimed by appellant on the ground of laches. This court in *Montana Power Co. v. Park Electric Co-op.,* 140 Mont. 293, 371 P.2d 1, stated:

"There is no statutory defense of laches in Montana. It is a creature of equity. This court has on numerous occasions discussed the doctrine. Recently in two cases, we have discussed the application of the doctrine. In Barrett v. Zenisek, 132 Mont. 229, 239, 315 P.2d 1001, and in Davis v. Steingruber, 131 Mont. 468, 470, 471, 311 P.2d 784, 785, we discussed laches. In the latter case, we said: 'Laches means negligence in the assertion of a right, and exists where there has been a delay of such duration as to render enforcement of the asserted right inequitable. [Citing cases.]' "

In the instant cause, respondents moved promptly on three separate occasions, namely, the years 1947, 1961 and 1962. There is no showing of laches here.

The sixth specification of error is that the trial court erred in entering and making a portion of its judgment as follows:

"It is hereby ordered, adjudged and decreed that the de-

fendant [appellant], his employees, servants and agents be, and they are hereby, perpetually enjoined and restrained from interfering with the free flow of waters in Birch Creek Drain by closing his check gate therein, or in any manner to the damage of the plaintiffs [respondents]." This is in essence paragraph three of the Court's Conclusions of Law.

Counsel for appellant apparently neglected to read the following paragraph four which states:

"It is not intended herein to prevent the defendant from taking any waters to which he is entitled from the Birch Creek Drain ditch for the irrigation of his property, but the same must be done without interference with the free flow of waters in said drain ditch to the damage of the plaintiffs."

The trial court held that appellant has a water right on Birch Creek Drain and he must use it without damage to his neighbors, the respondents.

Finding no error in the record, the judgment is affirmed.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.