No. 13051

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

FIRST SECURITY BANK OF BOZEMAN,
formerly known as Security Bank and
Trust Company of Bozeman, a Montana
Corporation,

                    Plaintiff and Respondent,

        -vs-

ARNOLD J. THOLKES,

                    Defendant and Appellant.

---

Appeal from:   District Court of the Eighteenth Judicial District,
               Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Bolinger and Wellcome, Bozeman, Montana
        H. A. Bolinger argued, Bozeman, Montana

    For Respondent:

        Morrow, Nash and Sedivy, Bozeman, Montana
        Edmund P. Sedivy argued, Bozeman, Montana

---

                            Submitted:  December 9, 1975

                              Decided:  MAR 3 0 1976

Filed:  MAR 3 0 1976


_____Thomas J. Kearney_____
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a summary judgment entered in an action on a promissory note in the district court, Gallatin County. The district court, Hon. Jack D. Shanstrom, presiding, ruled the defendant Arnold J. Tholkes was indebted to plaintiff Security Bank and Trust Company of Bozeman in the amount of $4,372.00, attorney fees in the amount of $1,000,00, and costs of the action. From the summary judgment, defendant appeals.

In July 1971, Arnold J. Tholkes (defendant) obtained from the Security Bank and Trust Company of Bozeman, (Bank), a loan to be used for the purchase of a used automobile, home improvements and to pay some miscellaneous bills. The Bank made the loan to defendant on July 22, 1971. Defendant executed an installment note in the amount of $6,533.40, to be repaid monthly in payments of $108.89 for 60 months (5 years) and was signed by defendant and his wife, Lovena M. Tholkes. The note further provided that any balance remaining upon maturity or upon default would draw interest at the rate of 9% per annum. A life insurance policy on the life of defendant was also obtained at this time and the premium added into the amount of the installment note.

As security for repayment defendant and his wife signed a UCC Security Agreement dated July 28, 1971. It described the used car (a 1967 Pontiac) and a rental home in Belgrade, Montana, owned by defendant, presumably where the home improvements were to be made. A lien was filed against the automobile with the registrar of motor vehicles, Deer Lodge, and a UCC Financing Statement was filed with the clerk and recorder, Gallatin County, describing the rental property.

The record of payments to the Bank by defendant, as set forth in the Bank's ledger, reveals that defendant was granted

extensions of payments on two occasions. At the date this action was filed, only 18 of 32 required payments had been made.

On March 13, 1974, a complaint was filed by the Bank alleging that defendant owed the Bank $3,591.33, as the unpaid balance of the promissory note, plus accrued interest at the rate of 9% per annum from the date of March 12, 1974. The complaint also asked for $1,000.00 in attorney fees. At the same time the Bank filed a writ of attachment on defendant's rental property in Belgrade.

Defendant by answer admitted the existence of the note but denied any balance due and owing. Defendant counterclaimed (1) that the rate of interest on the loan was usurious and defendant was entitled to twice the amount of interest he had paid to the Bank; (2) that the financing statement constituted slander of title upon the defendant's real property, claiming $5,000.00 actual damages and $10,000 punitive damages; (3) that the Bank's failure to secure life insurance on the wife for the note was wrongful and defendant is entitled to $5,000.00 damages.

Interrogatories were taken from both parties; defendant's deposition was taken; a hearing was held and exhibits were offered and admitted. The Bank filed a motion for summary judgment and memorandum in support, wherein the Bank claimed that in the complaint it made a mistake as to the amount now owed by defendant. The Bank claimed it was, in fact, owed $3,957.70.

On March 24, 1975, the district court entered summary judgment decreeing that the documents before the court "show that there is no genuine issue as to any material fact and that the plaintiff is entitled to Judgment as a matter of law * * *."
The court then awarded the Bank $3,957.70, plus accrued interest of $414.30, plus attorney fees of $1,000.00.

Defendant appeals and presents for this Court's review four issues:

1.  Whether the interest charged on this loan was usurious and whether the Bank claimed the correct amount as due and owing?

2.  Whether the filing of the financing statement constituted a slander of title upon defendant's real property?

3.  Whether the Bank wrongfully failed to obtain life insurance on defendant's wife, since deceased?

4.  Whether the attorney fees were reasonable and properly allowed?

We should keep in mind that the loan here was an installment loan provided for under the terms of section 5-527, R.C.M. 1947. This statute permits charging a rate of interest in excess of 10% per annum on installment loans and receiving the interest in advance. The interest is added to the principal amount of the note and the total amount divided into the agreed number of equal installments. The note in issue here was in the amount of $6,533.40 and breaks down as:

a)  Principal, the sum of ...........$4,500.00

b)  Life insurance premium on the
    life of Arnold J. Tholkes.......   244.64

c)  Filing fee ......................    10.00

d)  Precalculated interest charges ... 1,778.76

                       Total...........  $6,533.40.

Defendant would have the use of $4,500, but would make monthly installment payments of $108.89 for 60 months (5 years). The amount of interest he would pay in 5 years was $1,778.76, which converts to an annual rate of simple interest of 13.31% per annum.

Under section 5-527, R.C.M. 1947, the maximum interest in terms of add-on or discount interest that can be legally taken under Montana law on $4,500 is $1,794.10, computed:

```
$11.00 per $100 per year on the first $300 for
 5 years (33.00 x 5) = .........................$165.00

$9.00 per $100 per year on the next $700 for
 5 years ($63.00 x 5) = ........................ 315.00

$7.00 per $100 per year on the next $3,754.64
 for 5 years [$3,500 + 244.64 + 10.00 =
 $3,754.64] ($262.82 x 5) = ...............___1,314.10___
```

Total allowable interest...$1,794.10.

See Montana National Bank of Bozeman v. Kolokotrones, _____Mont.

_____, 535 P.2d 1017, 32 St.Rep. 526,529.

Defendant was charged interest at a rate less than the maximum allowed by section 5-527, R.C.M. 1947. The interest rate is not usurious. Defendant offered no evidence that he had made any payments other than those presented by the Bank; nor did he contest the mathematic calculations of the Bank.

Although never clearly stated by defendant, he seems to argue there is some significance in the fact that the Bank filed a UCC financing statement which only described the defendant's real property (on which the home improvements were to be made from some of the loan proceeds) and not the improvements to be made, as it pertains to the character of the loan, i.e., a charge against the real estate and a transformation from installment note to a conventional loan governed by section 47-125, R.C.M. 1947, which limits interest to 10% per annum.

Although the financing statement was in this case incorrectly completed in that it named only the real property and UCC requires that the fixtures and the real property be listed in security agreements and financing statements, nevertheless there is no authority offered that would support the argument that this financing statement could purport to claim an interest in real property. See Section 87A-9-102(1), section 87A-9-104(j),R.C.M. 1947.

A financing statement does not meet the statutory definitional requirements of a mortgage (section 52-202,R.C.M. 1947) and could not be filed as a mortgage (section 52-212, R.C.M. 1947). Defendant cites no case law and we can find none, that a financing statement of this type can claim an interest in real property to accomplish the transformation argued here.

Defendant also contends the filing of a UCC financing statement was a slander of title against his real property described in that statement. He cites no authority in support of this contention. In 50 Am Jur 2d, Libel and Slander, §541, p. 1060, appears this definition of slander of title:

> "One who maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages. The essential elements of the cause of action, which are subsequently discussed, are the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice, and special damages. The action is not for the words spoken, but for special damages for the loss sustained by reason of the speaking and publication of the slander." (Emphasis supplied.)

See Continental Supply Co. v. Price, 126 Mont. 363, 374, 251 P.2d 553.

The so-called "slander" not being actionable but the resulting special damages being the basis for the action, an averment of special damages is necessary. Continental Supply Co. v. Price, surpa. Rule 9(g), M.R.Civ.P., specifically provides:

> "When items of special damage are claimed, they shall be specifically stated."

The complaint, or in this instance the counterclaim, must show that the special damages are the natural and probable consequence of the slander. In his counterclaim, defendant claims he was damaged to the extent of $5,000 by the slander. In response to the Bank's Interrogatory No. 25, defendant answered:

- 6 -

"INTERROGATORY No. 25: In paragraph IV of Counterclaim, you allege slander of title and damages therefor, in the sum of $5,000.00. Please state how you have incurred such damages and explain in detail how you have computed this alleged amount of damages.

"ANSWER: The $5,000.00 damage claim is _for general damages_ sustained by taking a security interest in real property which is not permitted by the statutes of the State of Montana and the costs and expenses of my defending this action." (Emphasis supplied.)

Failure to support the allegation that the filing of the UCC financing statement constitutes slander, and more important the defendant's own admission concerning special damages, his claim of slander of title fails.

The third issue on appeal is the claim of defendant that the Bank should have procured life insurance on the life of defendant's wife, a cosigner on the promissory note and since deceased. It is elementary that before defendant can prevail on such a claim against the Bank, he must present competent evidence the Bank had a legal duty to procure such insurance. Defendant presented no such evidence. He admitted in his deposition that he never paid the premium for any insurance, other than that on his own life. The Bank was never given money by him to purchase such insurance, nor could it have purchased it, even if money had been given. The insurance application form of Transwestern Life Insurance Company, the insurance carrier involved here, specifically stated:

" * * * in the case of more than one debtor on the same debt, the first named debtor only shall be eligible for insurance."

Defendant next raises the issue of the propriety of the court's award of $1,000.00 attorney fees. The rule was very recently enunciated by this Court in Crncevich v. Georgetown Recreation Corp., _____Mont._____, 541 P.2d 56, 59, 32 St.Rep. 963, 968:

"To be sure there is a split among the states as to the need for proof of a reasonable attorney's fee when one is contracted for or appears on the face of a note. See 18 A.L.R.3d 733, 736, 740. But in contested

> cases we are inclined to follow those states
> requiring the introduction of proof from which
> a reasonable fee may be determined. To award
> a fee in such a case without proof would be
> to disregard the fundamental rules of evidence.
> An award of fees, like any other award, must be
> based on competent evidence. See Lyle v. Lyle,
> (Fla. 1964) 167 So.2d 256, 257. Furthermore
> the proper determination of a legal fee is central
> to the efficient administration of justice and
> the maintenance of public confidence in the bench
> and bar. See Baruch v. Giblin, 122 Fla. 59, 164
> So. 831,833. Because of respondents' failure of
> proof the award of fees was properly denied."

Evidence should have been introduced in the district court to demonstrate the proper amount of attorney fees due the Bank. In Forrester and MacGinniss v. B. & M.Co., 29 Mont. 397, 409, 74 P. 1088 (also cited in Crncevich), this Court established these guidelines:

> "' * * * The circumstances to be considered in
> determining the compensation to be recovered are
> the amount and character of the services rendered,
> the labor, time and trouble involved, the character
> and importance of the litigation in which the ser-
> vices were rendered, the amount of money or the value
> of property to be affected, the professional skill
> and experience called for, the character and standing
> in their profession of the attorneys. * * * The
> result secured by the services of the attorneys may
> be considered as an important element in determining
> their value.'"

Without evidence of any of the above factors being introduced in the district court, the award of $1,000.00 in attorney fees was improper.

Rule 56(c), M.R.Civ.P., provides in pertinent part:

> "The judgment sought shall be rendered forthwith if
> the pleadings, depositions, answers to interrogatories,
> and admissions on file show that there is no genuine
> issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law."

After a thorough review of the facts and issues of this case, we find there was no genuine issue as to any material fact and the moving party, the Bank, was entitled to a judgment as a matter of law. The judgment of the district court is affirmed on this issue.

- 8 -

The judgment of the district court on the issue of attorney fees is vacated and the cause remanded for an evidentiary hearing to determine proper attorney fees to be awarded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.