FILED

02/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0683

DA 15-0683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 37

JANE DESCHNER and JON LODGE,

     Plaintiffs and Appellants,

  v.

STATE OF MONTANA, DEPARTMENT
OF HIGHWAYS,

     Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 10-1800
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

            Kenneth D. Tolliver, Joshua P. Oie, Tolliver Law Firm, P.C., Billings, Montana

       For Appellee:

            Calvin J. Stacey, Bryan M. Kautz, Stacey, Funyak & Kautz, Billings, Montana

Submitted on Briefs:  December 7, 2016

Decided:  February 28, 2017

Filed:

                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Jane Deschner and Jon Lodge (Deschner and Lodge), appeal the October 6, 2016 judgment by the Thirteenth Judicial District Court, Yellowstone County. Deschner and Lodge challenge the District Court's jury instruction on inverse condemnation. We address the following issue:

*Whether the District Court's jury instruction on inverse condemnation was erroneous.*

¶2     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     This case concerns a rockfall that damaged Deschner and Lodge's residence at 1313 Granite Avenue, Billings, Montana, near the Billings Rimrocks (Rims). Originally constructed in the 1970s, Deschner and Lodge bought the house in 1996. On October 9, 2010, a sandstone slab fell from the Rims that weighed roughly two million pounds and measured approximately sixty feet long, thirty feet wide, and eight feet deep. The fallen slab displaced the home and rendered it uninhabitable.

¶4     The City of Billings owns the property from which the slab fell. The State of Montana constructed and maintains Montana State Highway 3, known locally as Airport Road, that runs on top of the Rims north of Deschner and Lodge's property. Originally constructed in 1936 over a commonly used route, the State improved Highway 3 in 1963, rerouting it roughly 170 feet south and installing culverts underneath the new roadway to facilitate water runoff. Deschner and Lodge sued the City of Billings, the State of Montana, and various insurance entities. On the inverse condemnation claim, the District

2

Court granted summary judgment to the City but denied summary judgement to the State. The only remaining defendant in this appeal is the State of Montana, Department of Highways.

¶5 At trial, Deschner and Lodge contended that the State's construction and placement of Highway 3 and Culvert 239 caused an unnatural increase in the amount of water that ran off the highway onto the rockfall site, ultimately causing the slab to fall onto their home. Deschner and Lodge called two experts who concluded that Culvert 239 increased the amount of water at the fall site, causing the slab to fall.

¶6 The State presented testimony from various Montana Department of Transportation (MDT) employees, engineers, hydrologists, geologists, and water resource specialists that contradicted Deschner and Lodge's experts. The State presented evidence that pieces of the Rims fall off naturally and will continue to fall off as a result of natural geologic processes; Deschner and Lodge were aware that pieces of the Rims fall off naturally; the State placed Culvert 239 in a natural drainage; construction of Highway 3 lessened the amount of water that historically reached the area above Deschner and Lodge's property; Culvert 239 was plugged and did not allow moisture to be discharged through it for the majority of its existence; and that any water that did flow through Culvert 239 when it was not plugged during infrequent rain events did not pool behind the slab that fell on Deschner and Lodge's house. Eight of the State's experts opined that the placement of Culvert 239 was not a substantial factor in causing the rockfall.

¶7 Deschner and Lodge proposed two jury instructions on inverse condemnation. Proposed Instruction No. 12 stated:

3

For Plaintiffs' claim of inverse condemnation against the State of Montana, you are instructed as follows:

(1)    The Court has determined that Culvert 239 was placed according to the plans for the reconstruction of Highway 3 in 1963.
(2)    For you to determine is whether the water flowing from Culvert 239 proximately caused Plaintiffs' damages.

Alternatively, Deschner and Lodge's proposed Instruction No. 12a stated:

For Plaintiffs' claim of inverse condemnation against the State of Montana, you as the jury must determine the following:

(1)    Whether Highway 3 and its Culvert 239 was a public improvement as deliberately planned and built.
(2)    If Highway 3 and its Culvert 239 was a public improvement, was the water that flowed from it the proximate cause of Plaintiffs' damages.

The District Court rejected both of Deschner and Lodge's proposed instructions, and instead gave Instruction No. 29. Instruction No. 29 listed the *Albers* Factors that this Court adopted in *Rauser v. Toston Irrigation District*, 172 Mont. 530, 565 P.2d 632 (1977). Instruction No. 29 stated:

In order to recover damages under their inverse condemnation claim against the State of Montana, plaintiffs must show the following:

(1)    The damage was reasonably foreseeable;
(2)    The likelihood of public works not being engaged in because of unforeseen and unforeseeable direct physical damage to real estate is remote;
(3)    That they, as property owners, suffered direct physical damage to their properties as the proximate result of the works as deliberately planned and carried out;
(4)    The cost of such damage can better be absorbed, and with infinitely less hardship, by the taxpayers as a whole, than by owners of the individual parcels; and
(5)    If they go uncompensated they would contribute more than their proper share to the public undertaking.

4

Deschner and Lodge objected to Instruction No. 29, arguing the *Albers* Factors in *Rauser* did not reflect current law regarding inverse condemnation in Montana.

¶8 The jury returned a Special Verdict. Pertinent to this appeal, the jury found: (1) the State was not negligent; (2) Deschner and Lodge's negligence was a substantial factor in bringing about their own damages; (3) the State contributed 0% and Deschner and Lodge contributed 100% to the cause of Deschner and Lodge's damages; and (4) the State did not inversely condemn Deschner and Lodge's property.

## STANDARDS OF REVIEW

¶9 We review for an abuse of discretion whether the district court correctly instructed the jury. *State v. Thorp*, 2010 MT 92, ¶ 32, 356 Mont. 150, 231 P.3d 1096. The test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgement or exceeded the bounds of reason resulting in substantial injustice. *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263.

¶10 In reviewing whether a district court properly gave a particular jury instruction, we consider that instruction in its entirety in connection with the other instructions given and in association with the evidence presented at trial. *Busta v. Columbus Hosp.*, 276 Mont. 342, 359, 916 P.2d 122, 132 (1996). We review jury instructions in their entirety to determine if the instructions given by a district court fully and fairly instruct the jury on the law applicable to the case. *Tarlton*, ¶ 19. A district court's refusal to give a proposed jury instruction only constitutes reversible error when "such refusal affects the substantial rights of the party proposing the instruction, thereby prejudicing [the party]." *Busta*, 276 Mont. at 360, 916 P. 2d at 133. The party assigning error must show prejudice to prevail,

5

and we will not find prejudice if the jury instructions in their entirety state the applicable law of the case. *Tarlton*, ¶ 19.

**DISCUSSION**

¶11 *Whether the District Court's jury instruction on inverse condemnation was erroneous.*

¶12 Deschner and Lodge argue the District Court erred in giving Instruction No. 29 because it is not a full, fair, and accurate representation of inverse condemnation law in Montana. Deschner and Lodge contend any test for inverse condemnation must be evaluated for conformity with Article II, Section 29 of the Montana Constitution, which provides: "Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner."

¶13 Although the District Court instructed the jury on the *Albers* Factors in its inverse condemnation instruction, Deschner and Lodge note that this Court has only applied the *Albers* Factors in *Rauser*, and our case law since *Rauser* reflects that recovery on an inverse condemnation claim is appropriate when property owners can demonstrate that a property incurred damage proximately caused by a public improvement that was deliberately planned and built. *See Rauser*, 172 Mont. at 539, 565 P.2d at 638; *see also Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, 348 Mont. 80, 201 P.3d 8; *Buhmann v. State*, 2008 MT 465, 348 Mont. 205, 201 P.3d 70; *Knight v. City of Missoula*, 252 Mont. 232, 827 P.2d 1270 (1992); *Thelen v. City of Billings*, 238 Mont. 82, 776 P.2d 520 (1989); *Adams v. Dep't of Highways*, 230 Mont. 393, 753 P.2d 846 (1988);

6

*Knight v. City of Billings*, 197 Mont. 165, 642 P.2d 141 (1982). Consistent with these post-*Rauser* holdings, Deschner and Lodge contend that inverse condemnation claims require satisfaction of only four elements: (1) a compensable property interest; (2) damage to that property interest; (3) a public improvement; and (4) causation. Deschner and Lodge assert that the first and third elements are questions of law, and as a matter of law, their home is a compensable property interest and the Highway and Culvert are public improvements. Thus, Deschner and Lodge contend that only the second and fourth elements were issues for the jury to decide. Deschner and Lodge contend the District Court erred when it rejected their instruction that provided they were entitled to recover on their inverse condemnation claim if the jury found that the highway and culvert were (a) deliberately planned and built and (b) the proximate cause of Deschner and Lodge's damages.

¶14 Deschner and Lodge argue in the alternative that if *Rauser* does define inverse condemnation law in Montana, then Instruction No. 29 is inaccurate because it applied the *Albers* Factors as elements, and not "guides." *See Rauser*, 172 Mont. at 539, 398 P.2d at 638. Deschner and Lodge assert that the District Court's instruction on inverse condemnation misstated the law.

¶15 The State contends that Deschner and Lodge's argument ignores that *Rauser* is established case law and that the evidence testified to and admitted supports the jury's verdict. Because the District Court relied on established precedent, the State argues the District Court did not abuse its discretion in instructing the jury on inverse condemnation. Alternatively, the State argues that if the District Court did abuse its discretion in relying

7

on *Rauser* when instructing the jury, such error would be harmless because the jury found that the State did not cause Deschner and Lodge's alleged damages.

¶16 In *Rauser*, this Court addressed whether an inverse condemnation claim requires a showing of negligence in design, construction, or operation of the public project. *Rauser*, 172 Mont. at 536, 565 P.2d at 636. We held: "Montana's case law does not require a showing of negligence or a theory of negligence when faced with deliberate or intentional acts." *Rauser*, 172 Mont. at 537, 565 P.2d at 637. We then went on to adopt, as guides, the five *Albers* Factors:[1]

> (1) the damage to this property, if reasonably foreseeable, would have entitled the property owners to compensation; (2) the likelihood of public works not being engaged in because of unforeseen and unforeseeable possible direct physical damage to real estate is remote; (3) the property owners did suffer direct physical damage to their properties as the proximate result of the works as deliberately planned and carried out; (4) the cost of such damage can better be absorbed, and with infinitely less hardship, by the taxpayers as a whole, than by owners of the individual parcels, and (5) "the owner of the damaged property, if uncompensated, would contribute more than his proper share to the public undertaking."

*Rauser*, 172 Mont. at 539, 565 P.2d at 638 (citing *Albers*, 398 P.2d at 136 (quoting *Clement v. State Reclamation Board*, 226 P.2d 897, 905 (Cal. 1950))).

¶17 Our holding in *Rauser* is more noteworthy for establishing what is *not* required to bring a claim for inverse condemnation—negligence—than what is required. Although we adopted the *Albers* Factors as guides in an inverse condemnation claim, we did not actually apply them in *Rauser*, nor have we applied them in any case since *Rauser*. As Deschner and Lodge correctly point out, our subsequent case law only references *Rauser*

---

[1] Adopted from *Albers v. County of Los Angeles*, 398 P.2d 129, 137 (Cal. 1965).

for the premise that: "A property owner may recover in an inverse condemnation action where actual physical damage is proximately caused to his property by a public improvement as deliberately planned and built." *Knight v. Missoula*, 252 Mont. 232, 243, 827 P.2d 1270, 1276 (1992) (citing *Rauser*, 172 Mont. 530, 565 P.2d 632). We agree with Deschner and Lodge that the test for inverse condemnation must be evaluated within the context of Article II, Section 29 of the Montana Constitution, which our subsequent case law provides. To the extent that the *Albers* Factors may be incommensurate with Article II, Section 29, they should not be strictly applied as elements of an inverse condemnation claim.

¶18   Although Deschner and Lodge's argument concerning the applicability of the *Albers* Factors is well taken, our analysis cannot end there. How the *Albers* Factors should be or were applied is not the dispositive issue in this case. All parties agree that in order to recover on their inverse condemnation claim, Deschner and Lodge must establish that the State caused their damages. Because the jury did not find that the State inversely condemned Deschner and Lodge's property, it did not reach the issue of causation within the context of the inverse condemnation claim. It did, however, answer this question as it pertained to Deschner and Lodge's negligence claim. Specifically, question six on the special verdict form asked the jury: "What percentage, if any, do you find each party contributed to the cause of Plaintiffs' damages?" The jury answered the question: "State of Montana 0% at fault."

¶19   Although this question was asked in the context of Deschner and Lodge's negligence claim, causation of damages was a contested issue that was common to both

9

the negligence and inverse condemnation claims. The damages that may have been caused by a potential inverse condemnation are indistinct from the damages that may have been caused by any potential negligence on the part of the State. The distinction between the two claims lies in the basis for imputing liability to the State, not in the damages resulting from that liability.

¶20 Deschner and Lodge contend that the jury's answer to Question 6 was, in fact, an allocation of negligence. But that is not what Question 6 explicitly asked; it asked the jury to allocate the parties' respective contributions to "the cause of Plaintiffs' damages." Further belying Deschner and Lodge's contention is that questions as to whether the State was negligent and, if so, whether its negligence was a substantial factor in bringing about Deschner and Lodge's damages, were already submitted to the jury as Questions 1 and 2.

¶21 In *Baldauf v. Arrow Tank & Eng'g Co.*, we held:

> The use of a special verdict form is left to the discretion of the trial court. "While it is within the trial court's discretion to structure the form and frame the questions of a special verdict, the interrogatories must be adequate to enable the jury to determine the factual issues essential to judgment." We use a three-part standard to determine the adequacy of a special verdict form:
>
> (1)     whether, when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to the jury;
>
> (2)     whether the submission of the issues to the jury was fair; and
>
> (3)     whether the ultimate questions of fact were clearly submitted to the jury.

*Baldauf*, 1999 MT 81, ¶ 49, 294 Mont. 107, 979 P.2d 166 (internal citations omitted) (quoting *Kinjerski v. Lamey*, 194 Mont. 38, 41, 635 P.2d 566, 568 (1981)). As noted

above, Instruction No. 29 incorrectly required Deschner and Lodge to prove elements to their inverse condemnation claim beyond that which Article II, Section 29 of the Montana Constitution and our case law subsequent to *Rauser* require. Nevertheless, when read in the context of the given instructions in their entirety, in connection with the evidence presented at trial, and in light of the jury's answer regarding causation on the special verdict form, we conclude that the District Court's refusal to give Deschner and Lodge's proposed jury instruction does not constitute reversible error because Deschner and Lodge failed to establish that the State caused their damages. Therefore, Deschner and Lodge's substantial rights were not affected and they were not prejudiced by the given instruction and the District Court's refusal of their alternative instructions.

## CONCLUSION

¶22 Both the District Court's inverse condemnation instruction, as well as the alternative instructions offered by Deschner and Lodge, required Deschner and Lodge to prove that the State was the proximate cause of their damages. The elements a plaintiff must prove in an inverse condemnation claim are (1) that the public improvement was deliberately planned and built; and (2) that, as planned and built, the public improvement proximately caused damage to the plaintiff's property. Juries should be so instructed. Nevertheless, irrespective of the other elements of inverse condemnation on which the jury was instructed in this case, Deschner and Lodge failed to prove the essential element of causation. Therefore, the District Court's refusal of their proposed instruction in lieu of Instruction No. 29 did not affect their substantial rights, and did not prejudice them.

11

¶23    Affirmed.

                                        /S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE