ANGELO MONACO ET AL., PLAINTIFFS AND APPELLANTS, *v.*
JEANETTE V. CECCONI, DEFENDANT AND RESPONDENT, ET AL.

No. 14161.
Submitted Dec. 12, 1978.
Decided Jan. 17, 1979.
589 P.2d 156.

J. Brian Tierney (argued), Butte, for appellants.

Knight, Dahood, Mackay & McLean, Conde F. Mackay (argued), Anaconda, for respondents.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This appeal arises from a judgment of the District Court, Deer Lodge County, the Hon. James Freebourn presiding, following a directed verdict for defendant. Plaintiffs' suit tó set aside decedent's deed of real property to defendant Jeanette Cecconi had been consolidated for purposes of trial with their contest over defendants' petition to have decedent's will admitted to probate. Plaintiffs allege that the deed and will had been executed under the undue influence of defendant Jeanette Cecconi.

Congetta Monaco, mother of nine, died in Anaconda on February 6, 1973. On July 11, 1973, in probate No. 5902 in the District Court, a will executed by her on September 25, 1962 was admitted to probate and her son Angelo J. Monaco was appointed administrator. This will left all of decedent's property, including the family home and thirty acres of land owned by her, in trust for a son, Anthony Thomas Monaco (who was then a minor).

Prior to her death however Congetta Monaco had executed a deed transferring the family home and thirty acres to her daughter, Jeanette Cecconi, on January 9, 1973 and the deed was recorded on that date. On February 7, 1974, Angelo J. Monaco, acting in his capacity as administrator of Congetta's estate, filed a complaint in the District Court (cause No. 11666) alleging that Congetta's deed had been executed under the undue influence of Jeanette Cecconi. Because Jeanette had transferred ten acres of the land to a friend, Glen J. Lutey, and another ten acres to her brother Pio J. Monaco, these latter two were joined as defendants in the action to set aside the deed.

On February 5, 1975, Jeanette Cecconi petitioned the District Court to admit to probate a later will of the decedent, this will executed November 5, 1970 (probate No. 6046). In this will, it was provided that all of the property of Congetta was to be left to daughter Jeanette. Angelo J. Monaco filed objections to the probate, alleging undue influence by Jeanette.

Later Jeanette procured an order removing Angelo J. Monaco as administrator of the decedent's estate in probate No. 5902, due to his failure to publish a notice of probate. Angelo moved to join the other children of the decedent as plaintiffs in cause No. 11666 (the action to set aside the deed) and also as objecting parties to the petition for the probate of the will of November 5, 1970 in probate No. 6046. The District Court granted these motions and also granted plaintiffs' motion to consolidate both the civil action to set aside a deed and the will contest.

The consolidated causes came on for trial before the court sitting with a jury on October 4, 1977. On the day of the trial, the court granted the motion of defendants to limit the issues in the trial to a determination as to the validity of the will of November 5, 1970. Defendants had successfully and correctly argued that a determination of the validity of the will would settle all issues involved in the consolidated action.

As so limited, the trial proceeded. At the conclusion of plaintiffs' case, the proponents of the will moved to dismiss, contending that the evidence adduced by the objectors to the will was insufficient as a matter of law. In ruling on the motion, the trial court stated that while there was weakness in plaintiffs' evidence, the court did not feel that the weakness was so outstanding as to become a question of law so as to take the case away from the jury. The court in ruling found (1) there was a confidential relationship that existed between Congetta and those receiving the property; (2) that there was an opportunity to exercise undue influence; (3) there was serious question of Congetta's susceptibility to undue influence; and, (4) there was a question of fact to be determined by the jury as to the exercise of undue influence by the beneficiary.

The trial then continued, with the proponents of the will putting on their testimony. Their witnesses include C. F. Mackay, the attorney who prepared the will, who supervised its execution, and who was a witness to the will. Also testifying was Rose Nazer, the other witness to the will, used because she could speak Italian and who had explained, both in English and Italian, to the testatrix, the meaning of the terms of the will. At the close of the proponents testimony, there being no rebuttal, proponents made a motion for a directed verdict in their favor. The court granted the motion, stating that a mere showing of an opportunity to coerce the testatrix is not enough to establish undue influence and that a disposition by will or property prompted by love, affection and gratitude for services well performed did not constitute undue influence.

The jury, as instructed, brought in its verdict in favor of the proponents of the will and judgment was entered accordingly. From that judgment, plaintiffs and contestants have duly perfected this appeal.

Appellants, as contestants, present three issues for our review:

(1) That the trial court erred when it granted the proponents' motion to restrict the issues in the trial to the question of the validity of the will of November 5, 1970.

(2) That the trial court erred in restricting plaintiffs' evidence claims to be relevant to the issues.

(3) That the trial court erred when it granted the motion for directed verdict.

Succinctly stated, the facts appearing in the record are these:

Congetta Monaco had raised her family and had lived on the property near Washoe Park near the outskirts of Anaconda, both during her husband's lifetime and prior to her death. In 1962, she had a will drawn by her attorney, William Brolin, which made trust provisions for her son Anthony Thomas Monaco, who was in high school at the time. The 1962 will named Jeanette Cecconi and her husband (now deceased) as trustees for the minor child. This boy left the family home in 1967 and Congetta Monaco went to Alaska in that year, returning in May 1968. From that time forward, she lived in the family home until shortly before her death.

One of her sons, Angelo Monaco, lived a short distance from the house of Congetta Monaco. It was apparent that bad relations sprang up between Congetta and Angelo. A focal point of dispute was a garage on the mother's property, which Angelo had used for the purpose of storing deer meat and other personal uses. Congetta requested the garage be torn down, apparently because it was dilapidated. When other family members, in company with Glen Lutey were engaged in tearing down the garage, a dispute arose between them and Angelo. From that time on it appears that relations were very strained between Angelo and his sister Jeanette.

The other brothers and sisters lived outside of Anaconda but came to that city almost annually to visit the mother. Each of them described visiting the mother during the years 1969, 1970, 1971 and 1972. Although each was questioned on the point, none stated with any certainty that during the year 1970 or subsequently, Congetta Monaco was not competent to transact her own business. Contestants contend that Jeanette so influenced the mother as to cause the mother to be afraid of Jeanette, and to lead the mother to avoid contacts with her other children by keeping her door locked or refusing to talk to them. It was on the basis of this testimony that the trial court apparently determined that Jeanette was afforded opportunities to exercise undue influence.

With respect to the will, it appears that Congetta called C. F. Mackay, attorney, to her home in November 1970 and asked the attorney to draw her a new will. The attorney went to the family home and talked to Congetta outside of the presence of any other family members. He was instructed by Congetta regarding the provisions in her will. The attorney testified he took great pains to determine the competency of Congetta. He further testified that Congetta made it very clear to him that she was leaving her property to Jeanette out of love and affection because Jeanette was the only child who was looking after her needs and wants at that time and had been ever since her return from Alaska. The evidence appears to bear out this statement.

At the time of the execution of the will, the attorney asked Rose Nazer to be present so the document could be read to Congetta in

English and Italian so her mark, which she placed on the will in lieu of a signature could be witnessed. The will execution occurred in the Monaco home. Jeanette was present, but did not participate in the execution proceedings, moving in and out of the room, speaking only to offer tea or other refreshments to the witnesses and testatrix then present. Glen Lutey was present in the home, but was in the bathroom making repairs and did not participate in any way in the execution of the will. The will was read both in English and Italian, discussion was had about its provisions and thereupon the will was executed by the testatrix and witnessed by the attorney and Rose Nazer.

Thereafter, the will was taken by the attorney to his office where permanent staples were attached to the will. The original will was delivered to Jeanette Cecconi, who placed the same in her safety deposit box.

On June 7, 1972, two years after the execution of the will, Congetta requested William Brolin, an Anaconda attorney, to draft a deed for her which had the effect of transferring all her real property to Jeanette. Congetta had earlier placed Jeanette's name on her bank accounts as a joint tenant. William Brolin testified he had learned Congetta had been ill and requested and received a statement from Dr. Howard Mize, Jr. her physician at the time, to determine whether she knew and comprehended what she was doing. He thereupon prepared the deed, took it to her residence, had a conversation with her in the living room, satisfied himself that she was competent, and supervised the execution of the deed which was then recorded.

The deed had the affect of transferring all of the real property to Jeanette. The testimony in the evidence shows that the full amount of the bank accounts was necessary to pay the funeral expenses and last illness costs of Congetta, which Jeanette paid.

The evidence is clear that it was Jeanette who took care of the mother's house and fed Congetta's dog while she was in Alaska. When Congetta returned from Alaska, Jeanette looked after her needs, took care of her finances, and bought her groceries. Jeanette

eventually moved into Congetta's home to take care of her mother. Glen Lutey, a friend of Jeanette, also moved into Congetta's home, undoubtedly with Congetta's consent, and also ministered to her needs. Evidence shows that Jeanette looked after her mother as a dutiful daughter. Other members of the family did not undertake to help the mother, either by personal attention or financially, but it should be stated not because they were not inclined to do so, but because these acts were being duly performed by Jeanette. Angelo's relationship with his mother was not friendly, especially following the incident concerning the destruction of the garage.

The first issue argued by contestants is that the trial court erred in limiting the trial issues to the validity of the November 5, 1970 will. Contestants wanted the evidentiary issues opened up so that the jury could also consider the circumstances surrounding the execution of the deed of January 9, 1973.

■ It was an act of judicial economy for the trial court to limit the issues as it did. The will had the effect of transferring all of Congetta's property to Jeanette, and likewise, the subsequent deed in practical effect also transferred all of Congetta's property to Jeanette. Thus, even if the deed was tainted by undue influence and subject to be set aside, the net result would be the return of the real property to the estate of Congetta. If her will was valid, the same property would still descend to Jeanette by right of devise. A determination that the will was valid, therefore, would settle all of the issues raised both in the will contest and in the action to set aside the deed. The execution of a deed on January 1, 1973 is remote enough from the execution of a will on November 5, 1970 that the circumstances surrounding the execution of each need not have been considered at once.

■ The District Court has discretion under Rule 42(b), Mont. R.Civ.P. to order a separate trial of any issue or issues in the cause before it, in furtherance of convenience or to avoid prejudice. An order of the District Court in this regard will not be set aside in the absence of clear abuse of discretion, which is not apparent here. *State ex rel. Rooks v. District Court* (1969), 153 Mont. 189, 456

P.2d 308. In fact this Court has held that it is an abuse of discretion not to order a separate trial on a specific issue where the separate trial would result in convenience and economy of time to the parties, witnesses and the court, and where a determination on the separate trial would end the matter without further proceedings. *State ex rel. Northern Pacific Railway Company v. District Court* (1970), 155 Mont. 91, 467 P.2d 145.

We hold therefore that the trial court did not err in limiting the issues in this case to a determination of the validity of the contested will.

The second issue raised by appellants concerns itself with rulings made by the District Court concerning offered evidence of the contestants.

The offered evidence to which objections were sustained by the District Court concerned deeds from Jeanette to a brother and to Glen Lutey in which she conveyed portions of property the mother had deeded to her; efforts of the contestants prove that the deed from Jeanette to Glen Lutey was not a transaction involving a sale and purchase of the land; and directions of the District Court to witness Angelo Monaco to be responsive to the questions propounded to him.

The proffered evidence does not pass the test of relevancy. The issues to be determined in this cause were the competency of the mother at the time of making the will and whether she was under the undue influence of any person when she made that will. Evidence would be relevant to those issues only if the existence of the facts sought to be proved made probable the existence of another fact in controversy relevant to prove the disputed issue. *Rhodes v. Weigand* (1965), 145 Mont. 542, 402 P.2d 588. Generally, whatever naturally and logically tends to establish a fact in issue is relevant and that which fails to qualify is not relevant. *Brion v. Brown* (1959), 135 Mont. 356, 340 P.2d 539. Deeds executed by Jeanette after the death of her mother, and some two years after the execution of the will, had no relevancy to the issues concerning the contested will.

■ As to the rulings made by the court respecting the witness Angelo Monaco, we hold that it is the duty and function of the trial court to control the proceedings in the court and this includes the conduct of the witnesses. Rulings directing a witness to be responsive to questions will not be considered by this court as prejudicial especially when such rulings appear proper and it is clear the trial court is attempting to limit the evidence to the issues at hand.

■ Contestants also contend that statements made by the District Court during the course of the trial were prejudicial since they were made in the presence of the jury. There is no basis however for such contention when a jury decision is not involved, as in this case. *Key v. Clements* (1958), 133 Mont. 344, 348, 323 P.2d 603.

The third issue raised by contestants is that the District Court erred in directing a verdict in favor of proponents of the will.

■ Under this heading, we look first to the subissue of competency. Although contestants alleged that Congetta was incompetent at the time she made her will, this was not seriously pursued in the evidence. None of the witnesses produced by contestants were willing to state that the mother was incompetent at the time she made the will. In fact some of them admitted she was competent to handle her affairs at the time. The subsequent evidence of the two witnesses to the will, the attorney and Rose Nazer, established her competency beyond contradiction.

The other subissue related to undue influence. When the District Court denied the motion for dismissal at the end of the contestants case, it found that there was evidence of a confidential relationship existing between Congetta and "those receiving" (Jeanette Cecconi and Glen Lutey). It further found there was an opportunity to exercise undue influence and that there was a question as to Congetta's susceptibility to that influence. These, standing alone, are not sufficient to set aside the will. This Court said in *Wallin v. Canyon Estate* (1974), 164 Mont. 160, 166, 519 P.2d 1236, 1239:

"This Court has often stated that mere suspicion that undue influence may have or could have been brought to bear is not sufficient to justify setting aside a will and that it is not enough to show

that a person had an opportunity to exercise such influence. It must appear that such influence was actually exercised and that it was pushed to such an extent that the resulting testamentary provisions were not those of the testator's will but those of the parties exercising such influence. Nor does Montana follow the rule that the burden shifts from contestant to proponent upon showing of a confidential relationship or active participation in procuring execution of a will between or by a person who profits thereby." (Citing case.)

It is on the point of undue influence "actually exercised" that the evidence of the contestants fails in this case. The undue influence must have been directed toward the particular testamentary act and at the time thereof, or so near thereto as to be operative. *Estate of Maricich* (1965), 145 Mont. 146, 159, 400 P.2d 873.

The essential elements of undue influence are: (1) the existence of a confidential or fiduciary relationship between the testator and the person alleged to have exerted undue influence; (2) active participation by such person in securing the preparation or execution of the will; and, (3) an undue benefit to such person or to another person under the will thus procured. *In Re Estate of Kerner* (1969), 275 Cal.App.2d 785, 80 Cal.Rptr. 289, 291; *In Re Fritschi's Estate* (1963), 60 Cal.2d 367, 33 Cal.Rptr. 264, 384 P.2d 656. We may concede here that a confidential relationship existed between Jeanette and her mother, and that the will perhaps resulted in an undue benefit to her, but one of the essential elements is missing: nothing here shows that she actually participated in securing the preparation of or the execution of the will. With the failure of contestants' evidence on that essential element, there was no fact issue for the jury to decide on undue influence. Under section 93-5205, R.C.M.1947, when upon trial of an issue by a jury the case presents only questions of law, the judge may direct the jury to return a verdict in favor of the party entitled thereto. We have held in an earlier case that where there is no substantial evidence of incompetency at the time of making the will, it is error to allow the issue to go to the jury. *Estate of Bodin* (1965), 144 Mont. 555, 398 P.2d 616.

122

██ Contestants also argue that since the district judge determined at the time of the motion for dismissal at the close of contestants' case that a fact issue existed, this means he was bound by that ruling and should have allowed the case to go to the jury. We have carefully reviewed the record leading up to the motion for dismissal and have concluded that had the District Court granted such motion, on appeal his decision would have been sustained. It is apparent that the District Court was being cautious and wanted to hear proponents' evidence before it finally determined whether a fact issue existed for submission to the jury. It was not improper, and in fact it is a salutory practice, for the District Court to reserve its decision in such manner as to give the parties every opportunity to prove by relevant evidence the issues in the case. Here, however, when at the close of all the evidence, a motion for directed verdict was made, the duty of the District Court was clear. There simply were no fact issues of undue influence or of competency for the jury to resolve relating to the contested will.

Affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and DALY concur.