No. 84-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

WILLIAM A. RAYNES,

                    Plaintiff and Appellant,

    -vs-

CITY OF GREAT FALLS, and
G. ALLEN JOHNSON, Individually,

                    Defendants and Respondents.

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

              Clary & Clary; Thomas H. Clary, Great Falls,
              Montana

    For Respondents:

              David V. Gliko, City Attorney, Great Falls, Montana
              Dzivi, Conklin & Nybo; William Conklin, Great Falls,
              Montana

                              Submitted on Briefs:  Nov. 2, 1984

                                       Decided:  February 20, 1985

Filed:  FEB    1985


            Ethel M. Harrison
_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a declaratory judgment of the District Court of the Eighth Judicial District, State of Montana, County of Cascade, whereby the District Court held that the proper party to review the decision of the Police Commission was the City Manager rather than the City Mayor, section 7-32-4153, MCA.

Two issues are presented for consideration.

1. Did the District Court err in concluding that the City Manager, rather than the elected City Commissioner, was the proper party to review the decision of the Police Commission?

2. On the particular facts of this case, did the District Court err in refusing to find that the City Manager could review the decision of the Police Commission without considering the constitutional safeguards guaranteed to a government employee upon the City's attempt to terminate his employment?

This case was submitted to the trial judge in the agreed stipulation of facts which are as follows:

1. Commencing March 12, 1973, after a city election, the form of government of the City of Great Falls, Montana, became a commissioner-manager form as authorized and defined in Title 11, Chapter 32 and 33, R.C.M. (1947), now Title 7, Chapter 3, Parts 43 and 44, Montana Code Annotated. The City of Great Falls, Montana, has continued to operate under the commissioner-manager form of government up to the present date.

2. The general administration of the City of Great Falls is also authorized under the provisions of ordinance

no. 1904. . . which ordinance was regularly adopted by the City Commission of the City of Great Falls on March 2, 1976, and set forth in Title II of the Official Codes of the City of Great Falls.

3. At all times relevant to this case, G. Allen Johnson was a duly appointed, qualified, acting City Manager of the City of Great Falls.

4. At all times relevant to this case, Shirley A. Kuntz was a duly elected, qualified, acting City Commissioner of the Great Falls City Commission and was designated Mayor of the City of Great Falls.

5. On January 13, 1982, Jack Anderson, Chief of Police of the City of Great Falls, Montana, filed a complaint before the City Commission, the City of Great Falls, Montana, against Sgt. William Raynes, charging Sgt. Raynes with conduct unbecoming a police officer, and conduct bringing reproach to the police force. Thereafter, on January 19, 1982, Jack Anderson, the Chief of Police of the City of Great Falls, filed an amended complaint with the City Commission of the City of Great Falls against Sgt. William Raynes to the same effect.

6. The complaint in the amended complaint referred to above is signed by both the complainant, Jack Anderson, Chief of Police of the City of Great Falls, and G. Allen Johnson, City Manager of the City of Great Falls.

7. G. Allen Johnson was listed as a possible witness for the City of Great Falls in the William Raynes proceeding before the Great Falls Police Commission, but did not actually testify before the Commission.

8. On January 12, 1983, the City Commission of the City of Great Falls entered its findings of fact, conclusions

of law, judgment and recommendation in the matter of Sgt. William Raynes.

9. On January 14, 1983, G. Allen Johnson, City Manager of the City of Great Falls, filed with the Police Commission an order confirming the recommendation of the Police Commission of the City of Great Falls and directing permanent discharge of Sgt. Raynes as a police officer of the City of Great Falls. In filing the said order, G. Allen Johnson, City Manager, purported to act pursuant to section 7-32-4161, MCA.

10. On January 17, 1983, Shirley A. Kuntz, as the City Commissioner of the City of Great Falls who was designated as the Mayor of the City of Great Falls, signed and deposited with the U.S. mail an order addressed to the City Commission of the City of Great Falls, Montana, which order modified the recommendation to the City Commission and directed Sgt. Raynes be retained as a police officer for the City of Great Falls subject to certain conditions and limitations . . . In so acting Shirley A. Kuntz, City Commissioner and Mayor, purported to act pursuant to section 7-32-4161, MCA.

11. The order of Shirley A. Kuntz, described in paragraph ten above, was received by the Police Commission of the City of Great Falls, Tuesday, January 18, 1983.

Thereafter the City filed a declaratory judgment action appealing the decision of Commissioner Shirley A. Kuntz and the District Court held that under section 7-32-4153, MCA, the proper party to review the decision of the Police Commission was the City Manager rather than the City Commissioner.

In addition to the above declaratory judgment action, the appellant has appealed the initial decision against him by the Great Falls Police Commission. That decision has been

4

affirmed by the Eighth Judicial District Court, Cascade County, Judge Wheelis sitting, and is now on appeal to this Court in Cause No. 84-165. In addition to the above action, the appellant has raised various constitutional claims in a civil rights suit filed in the U.S. District Court, entitled Raynes v. Jack H. Anderson, et al, Cause No. CD-83-62-GF. That case has been dismissed by Judge Batten and is now on appeal to the Ninth Circuit Court of Appeals.

The first issue is: Did the District Court err in concluding that the City Manager, rather than an elected City Commissioner was the proper party to review the decision of the Police Commission.

The appellant argues that under the commissioner-manager form of government set forth in section 7-3-4301, MCA et seq., there are elected commissioners and under section 7-3-4319, MCA, the commissioner who receives the highest number of votes is designated "mayor." Further, under section 7-3-4320, MCA, the mayor is "recognized as the official head of the municipality . . . " The word "mayor" as used in section 7-32-4160, MCA, is intended to apply to the person who is identified or designated as the chief executive of any city or municipality. It is clearly the intent of the Legislature to have the elected official, the person who is the official head of the city or chief executive, review the decision of the police commission.

The appellant argues that under the law of this state police officers have a right to a fair and impartial hearing before they can be terminated once they become members of the police force, citing section 7-32-4162, MCA. Additionally the only limitation of discipline on what a city manager can do to a police officer, is that the city manager cannot

5

discharge a police officer without the police officer being granted a hearing. Further when this section is read in conjunction with section 7-32-4160, MCA, there must be a different person in the position of reviewing the decision of the police commission. Also under the above section, Montana Code Annotated specifically authorizes the "mayor" to modify or veto the decision of the police commission.

Appellant further argues that under the case of Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, "due process considerations" must be granted to government employees when determining whether or not they should be terminated. These guidelines are binding on this Court as they were on the District Court. Appellant contends those guidelines cannot be met when the same party that brings charges is listed as a potential witness, sits in on the trial of the matter, and then, takes the position that he may modify the decision of the police commission that he has appointed, if it does not achieve its desired results. We find this argument unpersuasive. Contrary to the above argument, the City Manager, not the Mayor under the commissioner-manager form of government is the chief executive of the City of Great Falls with power to affirm, modify or veto the decision of the Police Commission.

The role of the mayor in a commissioner-manager form of government as noted above is defined in Montana Code Annotated sections 7-3-4319, 7-3-4320 and 7-3-4368. These statutes narrowly define and limit the role of the mayor in a city management form of government. Under our statutes, the mayor is the presiding officer of the commission and shall be the official head of the municipality for the purposes of receiving civil processes, for the purpose of military law,

6

and for all ceremonial purposes, section 7-3-4320, MCA. Said section 7-3-4320 specifically holds that the mayor "shall have no power to veto any measure."

In contrast, the power and the authority of the city manager under the city manager form of government is broad and pervasive as clearly demonstrated in sections 7-3-4314; 7-3-4361 through 7-3-4363; sections 7-3-4366; 7-3-4402; 7-3-4403; 7-3-4417; 7-3-4441; and 7-3-4463 through 7-3-4466, MCA. These statutes provide that an elected commission is required to appoint a city manager, section 7-3-4361, MCA, who shall be the administrative head of the municipal government and be responsible for the efficient administration of all departments. Specifically, he/she is empowered to appoint and remove all subordinate officers and employees of the departments in both the classified and unclassified service.

With respect to the police department, the statutes provide "the police force shall be composed of a chief of police and such officers, patrolmen, and other employees as the city manager may determine." Section 7-3-4465(1), MCA. Section 7-3-4465 specfies that certain statutes, including Part 41 of Chapter 32, entitled "Municipal Police on Force" shall govern the police department of all cities under the commissioner-form of government.

The following statutes pertaining to the municipal police force clearly mandate the city manager, not the mayor is in charge of the police force and makes all decisions pertaining to personnel: section 7-32-4103, 7-32-4108, 7-32-4113, 7-32-4151, and 7-32-4153, MCA. This last statute, section 7-32-4153, concerns the meaning of the word "mayor." Whenever that word (mayor) is used in sections 7-32-4109 and

7

7-32-4155 through 7-32-4163, it is intended to include "city manager," "city commissioner," or any other name or designation used to identify or designate the chief executive of any city or municipality.

The foregoing listing of statutes specifically granted to the city manager in those cities operating under the commissioner-manager form of government the power to appoint members of the police force; the power to revoke such appointments during the probationary period subject to the provision of the state law requiring hearings before the police commission; and the power to suspend or remove any member or officer of the police force. There is no similar power granted to a mayor under the commissioner-manager form of government.

It is obvious that the above statutes are intended to govern the municipal police force of any city, regardless of the form of government adopted by that city. See sections 7-32-3102 and 7-3-4465, MCA. Because these statutes are intended to apply to all forms of municipal government where the powers of mayor vastly differ, section 7-32-4153, MCA cited above, provide that when the term "mayor" is used in section 7-32-4155 through 7-32-4163, the term is intended to refer to whatever officer is the chief executive of the city depending upon the form of municipal government adopted by that city. Section 7-32-4153 applies to section 7-32-4160 and 7-32-4161 authorizing the mayor to enforce, modify or veto the decision of the police commission after hearings against a police officer. However under the commissioner-manager form of government the term "mayor" as used in the statutes means the city manager. Any other inter-

8

pretation would be clearly inconsistent with the statutory provisions and we find the appellant's contentions erroneous.

We find that under our statutes above quoted, the mayor has no basis whatever upon which to claim that he/she is the "chief executive" of the city, as that term is employed in section 7-32-4153 defining the term "mayor" for the purposes of the municipal police force. The mayor acting alone has no appointive, discharge, or supervisory power or authority over any employee, and clearly lacks the authority necessary for one to be considered the chief executive of a municipality. In the commissioner-manager form of government the mayor's primary duty is to serve as a voting member of the commission, which enacts the ordinances and sets the general policy of the city. As such, the mayor is clearly a legislative and not an executive officer.

On the question of the power of the mayor under the commissioner-manager form of government to veto the decision of the police commission, we adopt the holding of the West Virginia Supreme Court in the case of State ex rel. Dieringer v. Bachman (W.Va. 1948), 48 S.E.2d 420, 422. In that case, the court found the mayor was not a necessary party. We find here that the city manager is the "chief executive" of the City of Great Falls, and the only official empowered to affirm, modify or veto the decision of the police commission.

The second issue is whether the District Court erred in refusing to consider appellant's procedural due process claim as it related to this declaratory judgment action. The appellant alleges that the District Court refused to consider the appellant's constitutional claims as they related to this

declaratory judgment action. His argument that he attempted to get the District Court to consider his declaratory judgment, was a unique factual situation that required the District Court to conclude differently than it might otherwise have been able to do as it related to issue one. The appellant argues that the Board of Regents v. Roth (1972), 408 U.S. 564, 982 S.Ct. 2701, 33 L.Ed.2d 548, sets forth the criteria which must be met in order for a government employee to have been given his constitutional rights before his employment can be terminated. We find no merit to this argument.

The appellant's constitutional claim was not properly before the court in this declaratory judgment action. A declaratory judgment proceeding is primarily intended to determine the meaning of a law or a contract and to adjudicate the rights of the parties therein, but not to determine controversial issues of fact such as the existence or denial of procedural due process; see, State ex rel. Industrial Indemnity v. District Court (1975), 169 Mont. 10, 544 P.2d 438; and In the Matter of Dewar (1976), 169 Mont. 437, 548 P.2d 149. Here the appellant sought judicial review of a proceeding before the Great Falls Police Commission in another action filed before the Eighth Judicial District Court, and that matter is now on appeal to this Court, Cause No. 84-163. In addition, he raises various constitutional issues in a civil rights action filed with the United States District Court, and that matter is now on appeal in the Ninth Circuit Court of Appeals. Accordingly, we hold that the court did not err in refusing to consider the appellant's constitutional claims. Instead, it addressed the specific declaratory relief sought by the appellant in its petition

10

which was whether the Mayor or the City Manager of the City of Great Falls is a party entitled under the statues to affirm, modify, or veto a decision of the Police Commission discharging the appellant.

The judgment of the District Court is affirmed.

_John Conway Harrison,_
Justice

We concur:

_J. A. Turnage_
Chief Justice


_William E. Hunt_
Justices

Mr. Justice Frank B. Morrison, Jr., specially concurring.

I concur in the result but disagree with the rationale. Particularly, I take exception to this language:

> "A declaratory judgment proceeding is primarily intended to determine the meaning of a law or a contract and to adjudicate the rights of the parties therein, but not to determine controversial issues of fact such as the existence or denial of a procedural due process; . . ."

The majority's language is confusing at best. Hopefully no one will read this language and think that constitutional interpretation cannot be made in a declaratory judgment action. In fact, that is exactly how many important constitutional questions are answered. See Grossman v. State Department of Natural Resources (Mont. 1984), 682 P.2d 1319, 41 St.Rep. 804; Committee for an Effective Judiciary v. State of Montana (Mont. 1984), 679 P.2d 1223, 41 St.Rep. 581.

Likewise, we should not give the impression that declaratory judgment actions foreclose determining controversial issues of fact. Whether fact issues are controversial makes no difference. Some fact issues, such as intent, are resolved in declaratory judgment actions.

This language indicates we think the existence or denial of procedural due process is a fact question. Whether or not a particular ordinance, statute, or administrative regulation, affords procedural due process is a question of law, not a question of fact.

The courts have every right to review procedural due process and should do so here. The issue has not had an adequate hearing and has not been considered by a majority of

our members. However, I believe that the procedural due process rights of plaintiff were afforded in this case and therefore I concur in the result.

_____
Justice

I concur in the foregoing special concurrence of Mr. Justice Frank B. Morrison, Jr.

_____
Justice