DA 07-0590

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 462

ROBERT TARLTON and MARY TARLTON,

Plaintiffs and Appellants,

v.

JAMES KAUFMAN and GRETCHEN KAUFMAN,

Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DV-06-861 Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

For Appellants:

Cory R. Gangle; Milodragovich, Dale, Steinbrenner & Nygren, P.C.; Missoula, Montana

For Appellees:

Phillip L. McCreedy; Datsopoulos, MacDonald & Lind; Missoula, Montana

Submitted on Briefs: July 23, 2008

Decided: December 31, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Robert Tarlton and Mary Tarlton (collectively "the Tarltons") appeal from the judgment entered on a jury verdict in the Fourth Judicial District Court, Missoula County, which found that a fence covered in dark material and approximately 26 feet in height installed by James Kaufman and Gretchen Kim Kaufman (collectively "the Kaufmans") was not a nuisance or a spite fence. We reverse in part and affirm in part.

¶2 We address the following issues on appeal, restated as follows:

¶3 I. Did the District Court err by instructing the jury that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view?"

¶4 II. Did the District Court err by dismissing Count II of the Tarltons' complaint, which sought a declaration from the District Court that the Kaufmans' fence was a spite fence?

¶5 III. Did the District Court err by excluding evidence that the Kaufmans' fence allegedly violated a local building code or by denying the Tarltons' request for a jury view of the properties?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 This case arises from a dispute between the Tarltons and Kaufmans, landowners who own adjoining properties along Lolo Creek near the rural community of Lolo, Montana. According to both parties, the dispute arose sometime in 2005, after the Tarltons either installed or repaired several yard lights on their property. The Kaufmans contend that the lights "interfered with the natural night-time beauty of the rural setting,

2

prevented [Mr. Kaufman] from practicing his astronomy hobby and forced Kim Kaufman to abandon her bedroom just so she could get some sleep."

¶7 Shortly after the lights were repaired, Kim Kaufman asked Bob Tarlton to install shields over the lights. According to the Kaufmans, the Tarltons refused this request. The Tarltons claim they initially decided to keep the lights off, but that an incident involving an unidentifiable car in their driveway late one night convinced them to keep at least one of the lights on. After an additional complaint about the lights from the Kaufmans, which allegedly included an offer from the Kaufmans to pay for light shields, Bob Tarlton installed his own shield on one of the yard lights. After the installation of the shield, the Kaufmans and Tarltons apparently did not discuss the lights again.

¶8 Early in the summer of 2006, a separate conflict between the Tarltons and Kaufmans arose. This time, the dispute allegedly resulted from Bob Tarlton's maintenance of a pond that spans both the Tarltons' and Kaufmans' properties. According to the Tarltons, Jim Kaufman was angered by the maintenance of the pond and allegedly told Bob Tarlton that he could not legally maintain it. Thereafter, Bob Tarlton approached the Department of Natural Resources and Conservation ("DNRC") to determine whether he could lawfully maintain the pond. According to the Tarltons, the DNRC stated he could. While distinct from the dispute over the yard lights, the disagreement over the pond allegedly contributed to a further deterioration of the relationship between the Tarltons and Kaufmans.

¶9 In July of 2006, the Kaufmans began constructing the fence that is the subject of this dispute. When complete, the chain link fence stood approximately 20 feet above a

3

newly constructed 6-foot high berm, measured 270 feet in length, and was covered in two layers of dark material. The Tarltons argue that the fence does not enclose anything and that it is not supported structurally. The Tarltons also believe the fence is a spite fence, constructed "solely to harass, annoy, and irritate" them. The Kaufmans, on the other hand, contend that the fence is structurally sound and that they had no choice but to take some measures to block the glare from the Tarltons' yard lights.

¶10 The Tarltons initiated the present action following the construction of the fence, alleging in Count I of their complaint that the fence constituted a nuisance under § 27-30-101, MCA. Specifically, the Tarltons alleged that the fence destroyed the aesthetic value of their property, that it reduced the value of their property, that it destroyed their view, and that it was an eyesore. Count II of the complaint sought a declaratory judgment from the District Court that the Kaufmans' fence was a spite fence. The Tarltons also claimed they were entitled to injunctive relief and asked for punitive damages. The Kaufmans counterclaimed that the Tarltons' yard lights constituted a nuisance, stating that the lights "unreasonably interfere[d] with the Kaufmans' pursuit of their hobbies, disturb[ed] wildlife in the area and interfere[d] with the Kaufmans' general use and enjoyment of their property."

¶11 Following the initiation of this action, both parties made several procedural maneuvers, few of which are relevant to this appeal. However, the Tarltons do contend on appeal that the District Court erred by either granting or denying a variety of motions, which we now explain.

4

¶12 The first motion in contention on appeal is the Kaufmans' motion to dismiss Count II (Declaratory Judgment) of the Tarltons' complaint. Despite the Tarltons' argument that the District Court could appropriately declare the fence a spite fence under the Montana Declaratory Judgments Act, the District Court dismissed the claim, reasoning that the question of "[w]hether the fence is a spite fence involves numerous disputed questions of fact, which are properly the subject of trial on the merits."

¶13 The second motion in contention on appeal is a motion *in limine* filed by the Kaufmans prior to trial. In this motion, the Kaufmans asked the District Court to exclude any evidence that the fence violated "any county ordinance" or that it is "unpermitted or illegal" on the basis that such evidence is "irrelevant and immaterial to the issue of whether the fence at issue in this case was constructed solely for the purpose of harassing or annoying the Tarltons." The Tarltons argued that the evidence, although arguably prejudicial, was not *unfairly* prejudicial to the Kaufmans. The District Court granted the Kaufmans' motion to exclude the introduction of any evidence that the fence violated a county ordinance, was unpermitted, or was illegal.

¶14 The third motion in contention on appeal is a pre-trial motion filed by the Tarltons requesting a jury view of the properties. The Tarltons argued to the District Court that any photographs and other evidence depicting the fence would not "offer the best evidence of the situation." The Kaufmans objected to the Tarltons' motion for a jury view of the premises, arguing that the evidence sought to be introduced at trial was "sufficient for the jurors to resolve the material issues of fact in this case." The District

Court denied the Tarltons' request for a jury view at the close of the trial after determining that the photographs and other evidence introduced at trial were sufficient.

¶15 Also in contention on appeal is a jury instruction which included the statement, "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is unsightly or because it obstructs a party's view." The instruction, proposed by the Kaufmans prior to trial, was strenuously objected to by the Tarltons on the basis that the instruction misstated Montana's law on nuisance by including limiting language on unsightliness and view obstruction. The Kaufmans, on the other hand, argued that the instruction appropriately reflected Montana law. Ultimately, the District Court adopted the Kaufmans' proposed instruction with the limiting language as Instruction 13, adding only the word "generally" before the statement, "[a] structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view." In addition to the instruction for the Tarltons' nuisance claim, the District Court also gave instructions for the spite fence claim and for the Kaufmans' nuisance claim against the Tarltons regarding the lights.

¶16 Following a three-day trial, the jury unanimously found that the Kaufmans' fence was not a nuisance or a spite fence, that the Kaufmans were not required to remove the fence, and that the Tarltons' lights were not a nuisance. The jury foreperson included a statement at the end of the special verdict form, which stated:

> Although we did not find legal grounds to find the fence or the lights a nuisance, we the jury strongly and unanimously recommend the following:
> 1) The Tarlton's [sic] should replace the mercury vapor lights with modernized lights satisfactory to both parties; AND THEN
> 2) The Kaufman's [sic] take their fence down.

6

¶17 Following the jury's verdict, the Tarltons filed a Motion to Alter or Amend Judgment or Alternatively, Motion for New Trial, which the District Court denied on September 4, 2007. In denying this motion, the District Court stated, "[t]here are no reasonable grounds for taking the case from the jury and deciding it as a matter of law." The Tarltons appeal.

## DISCUSSION

¶18 **I. Did the District Court err by instructing the jury that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view."**

¶19 A district court has broad discretion to determine whether to give or refuse a party's proposed jury instruction, and this Court will not overturn a district court on the basis of an alleged instructional error absent an abuse of discretion. *Barnes v. City of Thompson Falls*, 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8. The test for abuse of discretion "is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92. In reviewing whether a particular instruction was properly given, "we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial." *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, ¶ 74, 162 P.3d 106, ¶ 74. Further, "the party assigning error to a district court's instruction must show prejudice in order to prevail,

7

and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Murphy Homes, Inc.*, ¶ 74. Finally, while a district court has broad discretion to formulate jury instructions, "that discretion is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *State v. Miller*, 2008 MT 106, ¶ 11, 342 Mont. 355, ¶ 11, 181 P.3d 625, ¶ 11.

¶20 Prior to trial, the Kaufmans proposed numerous instructions to the District Court, including specific instructions on the nuisance and spite fence claims. The Kaufmans proposed instruction for the Tarltons' nuisance claim with respect to the fence stated the following:

> The plaintiffs in this case have alleged that the defendants' fence constitutes a nuisance. A structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view.
>
> With this in mind, in order to prevail on their nuisance claim, the plaintiffs must prove by a preponderance of the evidence, all of the following:
>
> 1. That the plaintiffs are the owners of the property upon which they reside;
> 2. That the defendants, by building the fence, created a condition that was:
>    a. Injurious to the health, or
>    b. Indecent or offensive to the senses, or
>    c. An obstruction to the free use of property.
> 3. That the fence caused a substantial and unreasonable interference with the plaintiffs' use and enjoyment of their property;
> 4. That the plaintiffs have been harmed as a result of the fence and suffered damages.

The Kaufmans argued to the District Court that "a simple statement of the statutory definition [of nuisance] would not provide jurors with an accurate and complete

8

statement of the law" and that, therefore, it was necessary for the District Court to include the statement that "[a] structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view."

¶21 The Tarltons objected to the Kaufmans' proposed instruction, arguing to the District Court that the instruction for nuisance should be limited to the plain language of the statute. They stated that "the problem with [the Kaufmans'] theory . . . is that they are relying on California law (which does not actually say what [the Kaufmans] are representing, and which has a much higher population and much higher density of building than does Montana)." Ultimately, the District Court adopted, nearly verbatim, the Kaufmans' proposed instruction on nuisance as Instruction 13, adding only the word "generally" to the statement that, "[a] structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view."

¶22 On appeal, the Tarltons argue that the District Court erred by including the additional language regarding unsightliness and view obstruction. The Tarltons claim that this portion of the instruction is contrary to Montana's definition of nuisance, which provides that "[a]nything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." Section 27-30-101(1), MCA. The Tarltons claim that Instruction 13 "is problematic because it require[d] the jury to apply a legal standard that is not a Montana legal standard," and further, that the jury should have "simply been instructed on Montana's nuisance law as set forth in § 27-30-101(1), MCA." Finally, the Tarltons claim that "[t]he use of the word 'anything' by the Montana

9

Legislature means what it says—anything." Therefore, according to the Tarltons, the definition could "include an eyesore (such as the Kaufmans' fence) or destruction of a person's enjoyment of the view of public land (such as the Tarltons' view of the Lolo Peak area and the Lolo Creek drainage)." Based on this alleged instructional error, the Tarltons ask this Court to reverse the judgment and grant a new trial in this case.

¶23 The Kaufmans reiterate on appeal that Instruction 13 "correctly instructed the jury on the Montana law of private nuisance in the context of claims based upon obstruction of view or aesthetic considerations." The Kaufmans also state that Instruction 13 is "both consistent with Montana's statutory definition of nuisance and applicable case law interpreting that definition." The Kaufmans argue that it is proper for this Court to look to California's pattern jury instructions for guidance on this issue and to California's case law interpreting § 27-30-101, MCA, given that Montana's definition of nuisance is modeled after, and nearly identical with, California's definition of nuisance. *See* Cal. Civ. Code Ann. § 3479 (2008).

¶24 After reviewing the arguments in this case, we conclude that Instruction 13 improperly limited the definition of nuisance in Montana. Importantly, there is no relevant statutory authority in Montana for including the statement that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view." Montana's definition of nuisance, which applies to both public and private nuisance claims, states clearly that "[a]nything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property .

10

. . . is a nuisance." Section 27-30-101(1), MCA. Except for limitations on farming operations and activities authorized by statute, the additional nuisance statutes set forth in Chapter 30 of the Montana Code Annotated do not provide further limitations on what may or may not constitute a nuisance in Montana. *See* Sections 27-30-101(2) through -(3), MCA.

¶25 The Kaufmans cite this Court's decisions in *Barnes v. City of Thompson Falls*, 1999 MT 77, 294 Mont. 76, 979 P.2d 1275, *Belue v. State*, 199 Mont. 451, 649 P.2d 752 (1982), and *McCollum v. Kolokotrones*, 131 Mont. 438, 311 P.2d 780 (1957), in support of their argument that the District Court correctly instructed the jury on the nuisance claim. *Barnes*, however, is not applicable to the facts of the present case. In *Barnes*, we dealt with whether a statutorily authorized sewer and storm drain system installed by the City of Thompson Falls constituted a nuisance under § 27-30-101(2). *Belue*, a similar case relied on by the Kaufmans, is also not applicable to the facts of the present case. In *Belue*, we addressed whether a slag pile that had been in an area for a number of years constituted a public or private nuisance. In neither *Barnes* nor *Belue* did we address the question of whether a fence's (or similar structure's) unsightliness or view obstruction could or could not be factors of a nuisance claim in Montana. Finally, the Kaufmans' reliance on our decision in *McCollum* is also inapposite. The Kaufmans rely heavily on our decision in *McCollum* for the proposition that "a structure or condition cannot constitute a nuisance merely because it is considered unsightly . . . ." In support of their argument, the Kaufmans point to our statement in *McCollum* that "evidence as to the unsightly condition of the premises or structures would not alone make the condition a

11

public nuisance." *McCollum*, 131 Mont. at 444, 311 P.2d at 783 (citing *People v. Oliver*, 86 Cal. App. 2d 885, 195 P.2d 926, 928 (1948)). However, *McCollum* is distinguishable from the present case, especially with respect to the question of unsightliness.

¶26    In *McCollum*, we evaluated whether "certain wooden [chicken] coops, pens, roosts, structures and fences" constituted a public nuisance. Specifically, the plaintiff in *McCollum* complained about the noise, smells, and cleanliness associated with the chicken coops and argued that the structures were a fire hazard as well as unsightly. The plaintiff's primary argument was that the chicken coops were constructed without a permit in violation of a city ordinance and that such a violation constituted a nuisance per se. Ultimately, we held that the chicken coops did not constitute a public nuisance. However, our holding was primarily based upon our determination that a violation of a municipal ordinance generally does not constitute a nuisance per se or a public nuisance. Furthermore, the structures in *McCollum* were not unusual in their size or composition, and the plaintiff's argument was based largely on the smells, noise, dust, and insects associated with the chicken coops. The plaintiff did not make any allegation of view obstruction. Here, however, the structure complained of is a massive fence, approximately 26 feet in height, which is covered in dark material. Further, our statement about unsightliness in *McCollum* did not address the question of whether unsightliness and view obstruction (or unsightliness in combination with any additional factor(s)), could constitute a nuisance in Montana. In the absence of any factually relevant case law in support of limiting nuisance on the basis of both unsightliness and view obstruction, and in light of Montana's expansive statutory definition of nuisance, we

conclude that the limitations on unsightliness and view obstruction articulated in Instruction 13 were inaccurate statements of Montana law.

¶27 The Kaufmans also cite our decisions in *Barnes*, *Belue*, and *McCollum* in support of the claim that this Court has looked to California to interpret Montana's law on nuisance, and that courts in California have stated that nuisance claims cannot rest solely on view and aesthetic considerations. *See Venuto* v. *Owens-Corning Fiberglass Corp.*, 22 Cal. App. 3d 116, 127, 99 Cal. Rptr. 350, 357 (1971) (stating the general proposition that "a building or structure cannot be complained of as a nuisance *merely* because it obstructs the view from neighboring property"); *see also Oliver v. AT&T Wireless Services*, 76 Cal. App. 4th 521, 535, 90 Cal. Rptr. 2d 491, 501 (1999) (stating that "the size and shape of a neighboring structure that does not obstruct the view and is otherwise permitted by law, however displeasing its appearance, cannot constitute a nuisance."). Therefore, according to the Kaufmans, the limiting language on view and aesthetic considerations was an accurate statement of the law. However, this discussion does not require an investigation of California nuisance law since our analysis considers only the question of whether the District Court fully and fairly instructed the jury on Montana's nuisance law. Since the Montana Legislature has not narrowed the definition of what constitutes a nuisance, we are not at liberty to do so here.

¶28 Also, despite the Kaufmans' argument to the contrary, we do not agree that Instruction 13 was proper due, in part, to its basis on California's pattern jury instruction. Notably, a review of California's pattern jury instruction for private nuisance makes clear that it does not include a limitation on unsightliness or view obstruction. *See* Jud.

13

Council of Cal. Civ. Jury Instr. 2021 (rev. Feb. 2007). The text of the pattern instruction generally mirrors California's statutory definition of nuisance, which, as noted earlier, is nearly identical to Montana's definition of nuisance found in § 27-30-101(1), MCA, but the instruction does not limit what may constitute a nuisance in California or include the statement that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view." Presumably, the limiting language was not included in the text of the pattern instruction because to do so, as we note later in this discussion, would be confusing to a jury given the broad definition of nuisance in California.

¶29 Furthermore, Instruction 13, when viewed in its entirety, is internally inconsistent. The second sentence stating that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view" stands in direct contrast with the broad language of § 27-30-101(1), MCA. We find this to have been both misleading and confusing to the jury. The limitation on unsightliness and view obstruction appears to limit what *could* constitute a nuisance under the language in subpart 2 of Instruction 13, which required the jury to find that the Kaufmans, by building the fence, created a condition that was either injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property. At trial, the Kaufmans' attorney even admitted that the fence "is not attractive" and that the "fence partially blocks [the Tarltons'] view." Based on this statement, the jury could have found that the fence was "indecent or offensive to the senses" but were precluded from doing so by the limiting language set forth in the first half of Instruction 13. Additional statements

14

made by the Kaufmans' attorney during closing arguments also contributed to the confusion in this case. Of particular note is the following statement: "There's no doubt that the fence isn't nice to look at. I'm not surprised they don't like looking at it. And there's no doubt that it blocks a portion of their view. Those don't constitute nuisances." When these contentions were objected to, the District Court invited the jury to "look at the instructions." In this case, the jury instruction's internal inconsistencies made it difficult for the jury to scrutinize whether these statements were accurate representations of Montana's law on nuisance.

¶30 Lastly, Instruction 13 was prejudicial to the Tarltons. The wording of Instruction 13 clearly emphasized the limitation on unsightliness and view obstruction in the first half of the instruction, which we have determined improperly limited the definition of nuisance in Montana. Given these considerations, Instruction 13 did not fully and fairly instruct the jury, and, consequently, the District Court erred in including the limiting language on unsightliness and view obstruction in Instruction 13.

¶31 **II. Did the District Court err by dismissing Count II of the Tarltons' complaint, which sought a declaration from the District Court that the Kaufmans' fence was a spite fence?**

¶32 The decision to dismiss a complaint for declaratory judgment is within the sound discretion of the trial court. *Northfield Ins. Co. v. Montana Assn. of Counties*, 2000 MT 256, ¶ 8, 301 Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8. Further, "[w]hen a district court determines that declaratory relief is not necessary or proper, we will not disturb the court's ruling absent an abuse of discretion." *Northfield*, ¶ 8. However, this Court will

15

"review the conclusions upon which that decision is based to determine whether the court's interpretation of the law is correct." *Northfield*, ¶ 8.

¶33    The Montana Uniform Declaratory Judgments Act ("the Act") provides that:

Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Section 27-8-202, MCA.  The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations and it is to be liberally construed and administered."  Section 27-8-102, MCA.  However, we have stated that "[a] declaratory proceeding is primarily intended to determine the meaning of a law or a contract and to adjudicate the rights of the parties therein, but not to determine controversial issues of fact such as the existence or denial of procedural due process . . . ."  *Raynes v. City of Great Falls*, 215 Mont. 114, 120-21, 696 P.2d 423, 427 (1985); *see also* 22A Am. Jur. 2d *Declaratory Judgments* § 28 (2003) (stating that "declaratory decree statutes are not designed for the purpose of establishing purely factual issues, such as the existence or denial of due process, and are not available where the object of the proceedings is to try such fact as a determinative issue rather than to seek a construction of definite stated rights, status, and other relations.").

¶34    In this case, the Tarltons claim that the District Court erred by dismissing Count II of their complaint, which sought a declaration from the District Court that the Kaufmans' fence was a spite fence.  Before the District Court, the Tarltons stated that they simply

16

wanted the District Court "to declare their rights, to declare that the fence is a spite fence, and to declare that the fence needs to be removed." The Tarltons even went so far as to base their claim for declaratory relief in Article II, Section III of the Montana Constitution, which provides that Montanans have the right to a clean and healthful environment. Specifically, the Tarltons argue that their "rights and use and enjoyment of their property are constitutional and the Kaufmans have interfered with their constitutional rights."

¶35 However, we agree with the District Court's statements that "[w]hether the fence is a spite fence involves numerous disputed questions of fact, which are properly the subject of trial on the merits" and that "[d]eclaratory relief is not available where the object of the proceeding is to try such a fact as a determinative issue rather than to seek a construction of definite stated rights, status and other relations." The resolution of this case necessarily required a factual determination of whether the fence was a spite fence. We stated that a spite fence is one that serves "no beneficial use or pleasure to the owner but was erected and is maintained for the purpose of annoying a neighbor." *Haugen v. Kottas*, 2001 MT 274, ¶ 15, 307 Mont. 301, ¶ 15, P.3d 672, ¶ 15 (citing 1 Am. Jur. 2d *Adjoining Landowners* § 106). It is clear that, in this case, it would have been improper for the District Court to declare that the Kaufmans' fence was a spite fence since the question of whether the fence failed to serve any beneficial use or pleasure to the Kaufmans or that the fence was erected and maintained to annoy the Tarltons were questions of fact appropriate for a trial on the merits. Further, the decision to dismiss the Tarltons' request for declaratory judgment was within the sound discretion of the District

17

Court. Therefore, we hold that the District Court did not err by dismissing Count II of the Tarltons' complaint for declaratory judgment. Since we find that the District Court properly granted the Kaufmans' motion to dismiss, we do not address whether the Tarltons were entitled to attorney fees under the Act.

¶36 **III. Did the District Court err by excluding evidence that the Kaufmans' fence allegedly violated a local building code or by denying the Tarltons' request for a jury view of the properties?**

¶37 A district court has broad discretion in determining whether evidence is relevant and admissible. *Kiely Constr. L.L.C.*, ¶ 92. Accordingly, we review a district court's evidentiary rulings for an abuse of discretion. *Kiely Constr. L.L.C.*, ¶ 92.

¶38 The Tarltons argue that the District Court erred by refusing to admit evidence that the fence violated Missoula County building codes. Specifically, the Tarltons sought to introduce evidence that Missoula County sent the Kaufmans letters informing them that the fence violated Missoula County building codes. Furthermore, the Tarltons sought to introduce testimony from the county building inspector that the "fence would require significant engineering to establish its structural integrity." This evidence, the Tarltons contend, could demonstrate to the jury that the Kaufmans' fence was a spite fence and built without regard to the necessary permitting processes that are meant to precede construction of certain structures. The Kaufmans, however, argue that they were initially not aware of the permitting process or building codes and that they took the necessary steps to secure a permit for the fence as soon as they became aware of the building codes.

¶39 In denying the introduction of the evidence, the District Court determined that the evidence, although relevant, was not probative of the central issues in the case and that it would likely lead to unnecessary confusion. We conclude that the District Court did not abuse its discretion by excluding evidence that the Kaufmans' fence violated, for at least a certain time period, the local building codes. The determination that such evidence would have the tendency to confuse the jury was within the sound discretion of the District Court, and consistent with M. R. Evid. 403, which states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Notably, the District Court also excluded evidence that the Kaufmans ultimately secured a permit for the fence. Therefore, we hold that the District Court did not err by excluding evidence of whether the fence violated local building codes.

¶40 With respect to the District Court's decision to deny a jury view of the property, we note that such a decision is also left to the sound discretion of the trial court. *See McJunkin v. Kaufman & Broad Home Sys.*, 229 Mont. 432, 446, 748 P.2d 910, 919 (1987). Section 25-7-401, MCA, provides, in relevant part, "[w]hen in the opinion of the Court, it is proper for the jury to have a view of the property which is the subject of the litigation . . . it may order the jurors to be conducted in a body . . . to the place, which shall be shown to them by the persons appointed by the court for that purpose."

¶41 The Tarltons argue that, in order for the jury to make an appropriate determination on whether the Kaufmans' fence was a nuisance and a spite fence, the "best evidence is

19

to look at both properties at issue, to view the fence both during the day time and also at night when the yard lights are on so, that the jury can apply the testimony of all witnesses to the conditions that the parties are alleging and so that they can determine the truth of statements made by these witnesses with regard to those conditions." In general, the Tarltons argue that the photographs, diagrams, and other visual media used at trial were insufficient to establish the true character of either the fence or the view it obstructs. The Kaufmans, in objecting to the Tarltons' motion for a jury view, argued that it "would be impractical, add to the costs of the litigation and would be unfair because the material conditions of the property had changed significantly since the lawsuit had been filed."

¶42 In this case, the District Court ultimately denied the Tarltons' motion for a jury view. In reaching this decision, the District Court appropriately weighed both the practical implications and the likely probative value of a jury view. The District Court also waited to make a determination on whether to allow the jury view until near the close of the trial. Only then did the District Court, after reviewing the sufficiency of the photographs and other evidence presented in the case, determine that a jury view was unnecessary. Therefore, we conclude that the District Court did not err by denying a jury view of the property.

## CONCLUSION

¶43 In sum, the District Court erred by instructing the jury that "[g]enerally, a structure or condition cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view." This instruction improperly limited the definition of nuisance set forth in § 27-30-101(1), MCA, and, when viewed in its entirety, was

20

misleading and confusing to the jury. The District Court, however, did not err by dismissing the Tarltons' claim for declaratory judgment. Finally, the District Court did not err by excluding evidence of whether the fence violated local building codes or by denying a jury view of the property in this case. We reverse and remand for further proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Brian Morris dissents.

¶44 "Good fences make good neighbors," wrote American poet Robert Frost from his perspective in rural New England in the early twentieth century. Frost gave voice to the longstanding human urge "to be let alone." *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 193 (1890) (noting that the traditional common law right to life and property had developed to encompass a broader "right to be let alone" that included recognition of "intangible" interests). Common sense dictated that minding your own business would be easier if barriers clearly demarcated the boundaries of your business.

¶45 Frost likely never imagined how his homespun aphorism would mutate in rural Montana of the early twenty-first century. The yearning to be let alone now confront mercury vapor lighting and industrial strength fencing that would make proud the wall builders of Berlin. Walden Pond it is not. Frost would take heart, however, from the similar common sense displayed by the jury in this matter. The jury recommended that the Tarltons should replace the offending 175 watt mercury vapor lights, known as "barn beacons," with modernized lights and that the Kaufmans, in turn, should "take down their fence."

¶46 The jury's plea for common sense fell on deaf ears. Instead the parties engaged in a modern form of the "prisoner's dilemma." The Tarltons had no guarantee that any efforts to modernize the lighting would lead to the Kaufmans removing the fence. On the other hand, the Kaufmans had no guarantee that a good faith gesture on their part of removing the fence first would be greeted with a decision by the Tarltons to remove the "barn beacons." The parties sought judicial resolution of their dispute.

¶47 The parties spent three days presenting their cases to the jury. The parties, not surprisingly, haggled over the proper instruction of nuisance to be given to the jury. The jury returned a verdict that the fence did not constitute a nuisance. The jury conversely determined that the Tarltons' mercury vapor lighting did not constitute a nuisance. The jury finally determined that the Kaufmans' fence did not qualify as a "spite fence" under the circumstances presented here. I dissent from the Court's failure to defer to the jury's reasoned judgment.

¶48 As the Court notes, we must "'consider the jury instruction in its entirety, as well

22

as in connection with the other instructions given and with the evidence introduced at trial.'" (quoting *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 74, 337 Mont. 411, ¶ 74, 162 P.3d 106, ¶ 74). The jury instructions in this matter included an instruction for nuisance on the fence, and instruction for nuisance on the mercury vapor lighting, and an instruction for a "spite fence." The Court must consider the separate nuisance instructions and the "spite fence" instructions together in evaluating whether the jury instructions, in their entirety, correctly stated the law. *Murphy Homes, Inc.*, ¶ 74. We also must remember that the Kaufmans filed a nuisance claim of their own regarding the Tarltons' mercury vapor lighting.

¶49 The nuisance instruction relating to the fence contained the admonition that "[g]enerally, a structure cannot constitute a nuisance merely because it is considered unsightly or because it obstructs a party's view." The instruction proceeded to set forth the elements for a nuisance claim. The Tarltons objected only to the admonitory language and raised no concern with the remainder of the instruction.

¶50 The District Court instructed the jury on the Kaufmans' nuisance claim in a manner nearly identical to the Tarltons' nuisance claim with one exception. The jury instruction on the Tarltons' nuisance claim contained the admonitory "generally" provision. The jury instruction on the Kaufmans' nuisance claim instead provided in its introductory paragraph that light shining on another's property "may constitute a nuisance where the intensity of the light is strong enough to *seriously* disturb a person of normal sensitivities." (Emphasis added.)

¶51 The District Court balanced its admonitory language regarding "generally" in the

23

nuisance instruction regarding the fence with the provision that the jury could not consider the Tarltons' mercury vapor lighting to constitute a nuisance unless the lights "seriously" disturbed the Kaufmans' enjoyment of their property. Nothing in Montana's statutory definition of nuisance, set forth in § 27-30-101, MCA, limits a nuisance to those things that "seriously" disturb a person's enjoyment of their property. Likewise, nothing in California's pattern jury instruction for private nuisance limits a nuisance to those things that "seriously" disturb a person's enjoyment of their property. Jud. Council of Cal. Civ. Jury Instr. 2021 (rev. Feb. 2007).

¶52 The District Court's jury instructions on the Tarltons' "spite fence" claim provided further context. These instructions provided first that no property owner has the right "to erect and maintain an otherwise useless structure for the sole purpose of injuring his neighbor." The "spite fence" instruction further provided that a "spite fence" is "of no beneficial use" to the party and that the party built the "spite fence" "solely to harass and annoy" their neighbors.

¶53 The jury rejected the Tarltons' "spite fence" claim and in doing so, rejected the notion that the Kauffman's fence constituted an "otherwise useless structure." The jury also explicitly rejected the contention that the Kaufmans had built the fence "for the sole purpose" of harassing and annoying the Tarltons. As implied by the jury's verdict, and made explicit by the jury's recommendation, the jury determined that the Kaufmans had built the fence to block the light emitting from the Tarltons' mercury vapor lights.

¶54 In the context of the evidence presented to the jury in this case, the District Court did not act arbitrarily without employment of conscientious judgment or exceed the

24

bounds of reason when it included the admonitory "generally" language in the jury instruction on the Tarltons' nuisance claim. *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92. I disagree with the Court's conclusion that the jury instructions, taken in their entirety, did not state the law of nuisance fully and fairly. *Murphy Homes, Inc.*, ¶ 74. I dissent on this issue. I concur with the remainder of the Court's opinion.


/S/ BRIAN MORRIS



Justice John Warner joins in the foregoing dissent.


/S/ JOHN WARNER